# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

MIKEL R. PORTER,                      )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          No. 4:20-cv-01034-SRC
                                      )
CORRECTIONAL CASE MANAGER, et al.,    )
                                      )
              Defendants.             )

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Mikel R. Porter for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.50. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, this action will be dismissed without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff submitted a copy of his certified inmate account statement. (Docket No. 6). The account statement shows an average monthly deposit of $7.50. The Court will therefore assess an initial partial filing fee of $1.50, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Potosi Correctional Center in Mineral Point, Missouri. He brings this action pursuant to 42 U.S.C. § 1983, naming Unknown Correctional Case Manager and Correctional Case Manager Leslie Labon as defendants. (Docket No. 1 at 2-3). Defendants are sued in both their individual and official capacities. The complaint is handwritten on a Court-provided form, and includes a number of exhibits, such as informal resolution requests (IRR), IRR responses, offender grievances, and grievance responses. The Court has reviewed these exhibits as part of the pleading.[1]

Plaintiff's "Statement of Claim" is somewhat confusing, as he is relating incidents that occurred at different times and in different correctional institutions. Nonetheless, he begins by alleging that while at the Southeast Correctional Center, various unnamed functional unit managers, correctional case managers, wardens, and the investigator all "deliberately lied about [his] sexual assault" by inmate Dewayne Shelton. (Docket No. 1 at 3). During this incident,

---

[1] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

3

plaintiff states that he was cut in the face with a "knifelike weapon." Plaintiff further states that he "discovered a horsefly inside [his] food during lunch and dinner because" he had filed IRRs and grievances about his sexual assault.

On April 3, 2018, plaintiff states that he arrived at the Northeast Correctional Center. (Docket No. 1 at 4). After getting out of "the hole," he reported that he was "having negative vibes from the gangs that surround [him] daily." Plaintiff contends that "staff ignored [his] complaint." On December 7, 2018, plaintiff asserts that he entered protective custody, and that at some point, his "commissary clothes" were "deliberately thrown away" by a correctional officer. He further claims that he received horseflies "inside [his] state tray" on "innumerable" occasions.

On March 10, 2020, plaintiff arrived at the Potosi Correctional Center. He states that staff put him in a cell with a "sexual predator" who sexually assaulted him and "beat [him] with the palm of his hand," while also dragging him on the ground by his hair. Plaintiff pressed the panic button "countless times." When a correctional officer came to give the inmate a conduct violation, plaintiff states that he sought to report his sexual assault and a theft, and to be placed in protective custody. However, the correctional officer refused to pull him out of the cell. As noted in plaintiff's exhibits, the purported sexual assault could not be substantiated. (Docket No. 1-1 at 2).

Plaintiff is seeking to "persecute and sue for all [his] pain and suffering and injustice" with regard to his assault, sexual assault, property theft, and wrongful classification. (Docket No. 1 at 5).

Subsequent to the filing of his initial complaint, plaintiff submitted fourteen additional supplements. First, on September 14, 2020, plaintiff filed a document complaining that correctional staff were "wicked, insolent, [and] deceitful." (Docket No. 5 at 1). He states that an individual named Price returned his mail to him because it did not have enough stamps, while

4

Officer Petry did not turn in his legal mail to the United States Courts. He further accuses "staff" of "continually messing with [his] state food," giving him "false conduct violations," and "messing with [his] commissary." Plaintiff also asserts that Joshua Browers, J. Jones, and unknown correctional case managers refused to give him IRR forms. (Docket No. 5 at 2). With regard to his purported sexual assault while at Potosi, plaintiff notes that his Prison Rape Elimination Act (PREA) allegation was investigated and determined to be unfounded. Plaintiff asserts that he was wrongfully prevented from filing an IRR on the PREA investigator by an unknown correctional case manager.

On September 28, 2020, plaintiff filed a second supplement, in which he alleges that he was getting skipped on meals and showers, and that Browers, Jones, and an unknown correctional case manager were ignoring his IRRs. (Docket No. 7 at 1). He lists twenty-nine separate correctional staff members who he deems "wicked, ungodly, insolent, deceitful" and false. (Docket No. 7 at 2). Plaintiff also alleges that on September 13 and September 15, 2020, administrative segregation "worker" James Lewis tampered with his coffee, and that on September 18, 2020, staff went through his cell while he was in the shower, messing it up and tearing his "Christianity poster." (Docket No. 7 at 3, 8). Another administrative segregation worker allegedly made "sexual comments" and threats. (Docket No. 7 at 3). Plaintiff also objects to staff slamming the food port door. With regard to defendant Labon, plaintiff alleges that Labon gave him three false conduct violations, and refused to give him IRRs. (Docket No. 7 at 5).

The second supplement also includes the allegation of sexual assault at the Potosi Correctional Center that plaintiff first mentioned in his complaint. More specifically, plaintiff states that he was placed "in a cell with a predator," and that on March 13, 2020, his cellmate touched and grabbed him on the buttocks, hit him with the palm of his hand, and dragged him

around the cell. (Docket No. 7 at 5-6). Plaintiff hit "the panic button a thousand times" but claims

no help came. (Docket No. 7 at 6). However, he also states that a young white correctional officer

came to give plaintiff's cellmate a conduct violation. This correctional officer allegedly refused to

listen to plaintiff's report of sexual assault and theft. Later, James Evans "lied" about plaintiff's

PREA claim, and gave plaintiff a false conduct violation for fighting. Joshua Browers also

allegedly gave plaintiff a false conduct violation. (Docket No. 7 at 6-7).

Plaintiff complains that Investigator Idol, who investigated his PREA claim, found it

unsubstantiated. (Docket No. 7 at 6). He therefore states that Investigator Idol is wicked and

corrupt. Plaintiff also alleges that on September 4, 2020, there were "human remains" on his food

tray. (Docket No. 7 at 9). Specifically, he claims to have found "an ear cooked in fully with the

potatoes." Finally, plaintiff asserts that an individual identified as B. Lightski refused to give him

a clothing exchange, even though plaintiff states that his clothes are bloodstained, filthy, holed,

tag-less, and too big. Along with the allegations in this supplement, plaintiff has attached several

exhibits, including corrective action reports and conduct violation reports.

On October 8, 2020, plaintiff filed a third supplement, which consists of one-hundred-and-

sixteen pages of exhibits. (Docket No. 9). The exhibits include numerous conduct violation reports,

property inventory lists, IRRs, IRR responses, grievances, grievance responses, grievance appeals,

grievance appeal responses, warden's responses, corrective action reports, disciplinary action

reports, and classification hearing forms.

On October 26, 2020, plaintiff filed a fourth supplement, in which he states that when he

"got out of the hole in Ad-Seg [his] commissary clothes had boot stains" on them. (Docket No. 10

at 1). He explains that when he "went into the hole at N.E.C.C." on November 2, 2019, all his

6

clothes were "clean and newlike." However, when he was transferred to the Potosi Correctional Center, someone messed with his property.

Furthermore, plaintiff alleges that he is missing certain items of property, such as headphones, two plastic cups, a bowl, plastic bags, and "Christianity pictures." He reported this theft to Joshua Browers, who refused to give him an IRR. Plaintiff also complains about his clothing issue, stating that his state gray, state whites, and blankets have not been replaced, even though they are too big, have holes in them, do not have tags, and are "blood stained inside the material of the white t-shirt." (Docket No. 10 at 1-2). Plaintiff further protests having no hot water in his cell; mental health "trying to put [him] on medication" that he does not want; Correctional Officer Davis "continually harassing" him; a nurse not giving him his therapeutic shampoo; and staff messing with his food, coffee, and milk.

On November 2, 2020, plaintiff filed his fifth supplement, claiming that on July 22, 2020, his clothing exchange forms were ignored by B. Lightski; that on July 24 and July 27, a nurse ignored his health service requests; that on July 28, he missed a medical appointment because a guard tried to put him in a holding cell with a known enemy; that on August 4, 2020, "ad seg vanity workers" messed with his state tray, leading to food not being properly made, not in the right spot, and not in the right amount; and that on August 25, 2020, the commissary overcharged him for ink pens. (Docket No. 11 at 13-16). Plaintiff also states that mental health is "continually" trying "to put [him] on its medication," and keep showing "up at [his] cell door asking [him]" if he wants medication. (Docket No. 11 at 19). He further asserts that Joshua Browers and J. Jones advised him that he could not get a clothing exchange while in administrative segregation, and did not allow him to file an IRR. (Docket No. 11 at 20). Along with these allegations, plaintiff's fifth

supplement includes a number of exhibits, such as IRRs, IRR responses, and a series of crossword puzzles, mazes, word finds, and riddles that appear to be part of a mental health packet.

On November 16, 2020, plaintiff filed his sixth supplement, in which he states that he is being targeted, harassed, and subjected to racial discrimination. (Docket No. 12 at 1). In particular, he claims that a white female cook is discriminating against him by threatening to write plaintiff a conduct violation because his fingernails are too long. Plaintiff asserts that his fingernails are three centimeters in length, and that the white cook's threat is harassment.

That same day, plaintiff filed his seventh supplement, in which he again states that food service staff "continually and purposely [harasses him] about [his] claws." (Docket No. 13 at 1). The Court notes that a bag of fingernail clippings was attached to this document. Plaintiff further complains that he does not want mental health services, and that he has not requested such services. (Docket No. 13 at 2). Plaintiff also states that he was missing property when he got out of administrative segregation. (Docket No. 13 at 3). As in earlier supplements, he states that Joshua Browers has refused to give him IRRs, that he still has not had a clothing exchange, and that Officer Davis continually harasses him.

On November 23, 2020, plaintiff filed his eighth supplement, stating that he is being targeted, harassed, discriminated against, and singled out by a white female cook. (Docket No. 14 at 1). Plaintiff states this is because he is transgender. According to plaintiff, the nature of the discrimination is that the cook is threatening to write him a conduct violation due to the length of his fingernails. He contends that his "claws are not even 3 [centimeters] long as of now…meaning not very long." Plaintiff further asserts that he is harassed by Officer Davis for wearing thermal pants in the pod; that he never got his state boots when he left administrative segregation; that he has not received a clothing exchange; and that mental health tries to put him on medications he

does not need. He also generally suggests that he is being harassed due to his name, bloodline, family, gender, and race.

On November 30, 2020, plaintiff filed his ninth and tenth supplements. In the ninth supplement, plaintiff asserts that he is being "targeted and [harassed] by mental health," because they are continually trying to put him on medication he claims he does not need. (Docket No. 15 at 1). He also states that Joshua Browers and Correctional Case Manager Cox refuse to give him his "appeals and grievances."

In his tenth supplement, plaintiff alleges that his informal resolution requests and grievances are being ignored, and that he has reported this "crime" to J. Jones, Joshua Browers, and Correctional Case Manager Cox, who refuse to allow him to proceed to the next stage of the grievance process. (Docket No. 16 at 1). He also states that he turned in two health service requests for I-Prin for his headaches and back pain, but that he has not received it. When he reported this to an "ugly ungodly nurse," he was advised that it would take a week for him to get it.

On December 21, 2020, plaintiff filed his eleventh supplement, in which he alleges that he is being targeted, harassed, and racially discriminated against by commissary staff and correctional staff such as Officer Davis, Joshua Browers, and Evans. (Docket No. 17 at 1). He further complains about clothing exchange forms being ignored, and "wicked" officers writing false conduct violations on him. The supplement also includes plaintiff's grievance, grievance response, grievance appeal, and grievance appeal response with regard to plaintiff's food trays.

On January 5, 2021, plaintiff filed his twelfth supplement, stating that Officers Brennen, Davis, and Jarvis are targeting him and discriminating against him by threatening to lock him up and write false conduct violations. (Docket No. 18 at 1). In particular, plaintiff claims that he is

being threatened with a conduct violation for wearing his "thermal pants in the pod," even though there is no rule against it. He further asserts that he found something in his food tray.

On January 6, 2021, plaintiff filed his thirteenth supplement, stating that he is being targeted, harassed, and racially discriminated against with regard to his clothing issue, food service, and medical staff. (Docket No. 19 at 1). Plaintiff also claims that staff opened his mail to the "inspector general['s] office," though he acknowledges placing "stuff [he] found inside [his] hot wheat [cereal] and oatmeal" into the envelope. He accuses Officers Davis and Brennen of purposeless harassment and discrimination, and Officer Davis of being disrespectful.

Finally, on January 13, 2021, plaintiff filed his fourteenth supplement, accusing Correctional Case Manager Lacee Cox of harassment and racial discrimination. (Docket No. 20 at 1). Specifically, he states that on January 6, 2021, Cox advised him that an order from the United States District Court prevented him from sending in his "complaint and exhibits." Upon request, Cox and an individual named Walters refused to let plaintiff see this "false" order. Plaintiff also complains about mental health harassing him by trying "to talk [him] out [of] proceeding to the next stage of the informal process." He requests a Court order to tell the department to stop targeting and harassing him about his fingernails, wearing thermal pants, and corruption.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983. His complaint specifically names two defendants, while a number of other individuals are mentioned in the subsequent supplements. Having reviewed the complaint and the fourteen supplements, the Court will dismiss this action without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

## A. Claims Against Leslie Labon

Plaintiff specifically named Leslie Labon, a correctional case manager for the Missouri Department of Corrections, as a defendant in his complaint. She is sued in both her official and individual capacities.

### i. Official Capacity Claim

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Labon is alleged to be employed by the Missouri Department of Corrections. As such, an official capacity claim against her is actually a claim against her employer, the State of Missouri. To the extent that plaintiff is seeking monetary damages, the claim fails for two reasons.

First, the State of Missouri is not a "person" for purposes of 42 U.S.C. § 1983. That is, § 1983 only "provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). *See also Deretich v. Office of Admin. Hearings*, 798 F.2d 1147, 1154 (8th Cir. 1986) (stating that "[§] 1983 provides a cause of action against persons only"). However, "neither a State nor its officials acting in their official

11

capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (stating that a "State is not a person under § 1983"); and *Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983").

Second, the State of Missouri is protected by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment").

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived her immunity "only where stated by the most express language or by such overwhelming implications from the

text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception is inapplicable, because the Supreme Court has determined that § 1983 does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will*, 491 U.S. at 66 ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is also inapplicable, because the State of Missouri has not waived its sovereign immunity in this type of case. *See* Mo. Rev. Stat. 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

Here, Labon is a state employee, and the official capacity claim against her is actually against the State of Missouri itself. To the extent that plaintiff is requesting damages, such a claim is barred by the Eleventh Amendment. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"). Moreover, as noted above, no exceptions to sovereign immunity are present.

To the extent that plaintiff is seeking prospective injunctive relief, plaintiff may bring a 42 U.S.C. § 1983 claim against an individual in an official capacity. *See Kruger*, 820 F.3d at 301 (explaining that "a state is not a person for purposes of a claim for *money damages* under § 1983") (emphasis added). Likewise, an official capacity claim is not barred by the doctrine of sovereign immunity when prospective injunctive relief is sought. *See Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (explaining that for purposes of the Eleventh Amendment, a state

official may be sued in an official capacity for prospective injunctive relief). Nevertheless, plaintiff has not demonstrated the State of Missouri's liability for any constitutional violation.

A governing body can be sued directly under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can assert liability against the State of Missouri.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the…official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a [governmental entity] should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390. "A policy may be either a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the [governmental entity's] governing body." *See Angarita v. St. Louis Cty.*, 981 F.2d 1537, 1546 (8th Cir. 1992).

Second, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a liability claim against a governmental entity by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff has not established any basis for asserting liability against the State of Missouri. First, plaintiff has not shown the existence of an unconstitutional policy. That is, he has not presented any facts pointing to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the" state as causing him harm. Further, he has not presented any facts supporting even the proposition that such policy exists.

Second, plaintiff has not demonstrated an unconstitutional custom. In other words, he has not shown the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the" state's employees, much less that policymaking officials were deliberately indifferent to or tacitly authorized such misconduct. Rather than showing a pattern, plaintiff's allegations are disconnected, repetitive, conclusory in nature, and fail to establish a constitutional violation.

Likewise, plaintiff has not presented facts showing a deliberately indifferent failure to train. Specifically, his facts do not indicate a "pattern of similar constitutional violations by untrained employees," or that he suffered an injury because of this pattern. Instead, as noted above, his factual allegations, such as they are, tend to be disconnected, repetitive, and conclusory.

For all the reasons set forth above, plaintiff has failed to state a claim against the State of Missouri. As such, his official capacity claim against Labon, a State of Missouri employee, must be dismissed.

### ii.    Individual Capacity Claim

With regard to plaintiff's individual capacity claim against Labon, plaintiff accuses Labon of giving him three "false" conduct violations while he was in administrative segregation at the Northeast Correctional Center, and of refusing to give him IRR forms for "innumerable staff problems." (Docket No. 5 at 16).

As to plaintiff's assertion that Labon is liable for giving him three false conduct violations, plaintiff has failed to present sufficient facts to raise a right to relief above the speculative level. *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017) ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). That is, plaintiff has not provided a single fact to

support his proposition that the conduct violations were "false." Instead, he presents the falsity as a conclusion, which the Court is not required to accept as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Therefore, this claim must be dismissed.

Plaintiff's grievance claim also fails. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff has alleged that Labon hampered his participation in the grievance process by not giving him IRR forms. However, a prison's grievance procedure does not confer upon plaintiff a substantive constitutional right. It therefore follows that the allegation that he has been denied access to such a procedure does not state a constitutional claim. Therefore, this claim must be dismissed.

As discussed above, neither of the allegations against defendant Labon state a claim under 42 U.S.C. § 1983. Therefore, the individual capacity claims against Labon must be dismissed.

**B. Claims Against Unknown Correctional Case Manager**

Along with Correctional Case Manager Labon, plaintiff has also specifically named an unknown "Correctional Case Manager at Potosi" as a defendant. This defendant is identified only by a badge number, and is sued in both an official and individual capacity. (Docket No. 1 at 2).

### i.      Official Capacity Claim

With regard to the official capacity claim against the Unknown Correctional Case Manager, plaintiff has failed to state a claim. The Unknown Correctional Case Manager is alleged to be employed by the Missouri Department of Corrections. Thus, as explained above, the official capacity claim against the Unknown Correctional Case Manager is actually a claim against the employer, the State of Missouri itself. *See Johnson*, 172 F.3d at 535. However, a state is not a "person" for purposes of a 42 U.S.C. § 1983 claim. *See Will*, 491 U.S. at 71. Moreover, an official capacity claim against a state employee for money damages is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus*, 197 F.3d at 955. To the extent that plaintiff is seeking prospective injunctive relief, he has not demonstrated that the State of Missouri is liable for violating his constitutional rights. *See Marsh*, 902 F.3d at 751 (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). For all these reasons, plaintiff's official capacity claim against the Unknown Correctional Case Manager must be dismissed.

### ii.      Individual Capacity Claim

Individual liability in a § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own

misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff makes only a fleeting reference to "correctional case managers" in his original complaint. (Docket No. 1 at 3). It is therefore unclear whether plaintiff is referring to the specific Unknown Correctional Case Manager named as defendant, and listed by badge number. Scattered throughout the fourteen supplements are further references to an unknown correctional case manager. However, plaintiff never makes clear whether these references are meant to describe the same Unknown Correctional Case Manager, or instead encompass different individuals. In short, plaintiff has failed to demonstrate this particular Unknown Correctional Case Manager's personal responsibility by showing "a causal link to, and direct responsibility for, the deprivation of rights." Therefore, the individual capacity claim against the Unknown Correctional Case Manager must be dismissed.

### C. Claim Regarding Alleged Sexual Assault at the Southeast Correctional Center

In his complaint, plaintiff asserts that unnamed functional unit managers, correctional case managers, wardens, and an investigator "deliberately lied about [his] sexual assault at" the Southeast Correctional Center. (Docket No. 1 at 3). This assault was allegedly perpetrated by another inmate.

Plaintiff's claim fails for two reasons. First, plaintiff has not properly identified each defendant, or shown how that particular defendant was personally responsible for violating his constitutional rights. In other words, he has not demonstrated each defendant's liability by alleging "a causal link to, and direct responsibility for, the deprivation of rights." *See Mayorga*, 442 F.3d at 1132. Instead, plaintiff broadly alleges that an unknown number of individuals simply "lied" about an alleged sexual assault. This is not sufficient to state a claim under 42 U.S.C. § 1983. As such, this claim must be dismissed.

Second, plaintiff's claim relies wholly on his assertion that defendants "lied," without providing any supporting facts as to what that meant in practice. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017). Furthermore, a complaint will not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id*. Here, plaintiff has provided a conclusion regarding defendants lying about a sexual assault, without any factual enhancement as to what the lie entailed, and how it harmed him. Therefore, this claim must be dismissed.

### D.  Claim Regarding Alleged Sexual Assault at the Potosi Correctional Center

Plaintiff states that while at the Potosi Correctional Center, staff placed him into a cell with a "sexual predator" who sexually assaulted him, beat him, and dragged him around the cell. (Docket No. 1 at 4). More specifically, plaintiff states that his cellmate touched his buttocks, struck him with the palm of his hand, pulled him off his bunk, and dragged him around the cell. (Docket No. 7 at 6). He states that no help came when he hit the panic button. When a "young white C.O. came to give" the cellmate a conduct violation, this officer refused plaintiff's report. Later, when plaintiff "finally got out of the cell," an individual named James Evans "lied about [plaintiff's] PREA and theft and wrote" a false conduct violation. Plaintiff accuses Investigator Idol, who

investigated plaintiff's PREA claim, of being "wicked" and corrupt for finding the sexual assault claim unsubstantiated.

### i.      James Evans

As noted above, plaintiff alleges that James Evans lied about plaintiff's PREA complaint and wrote him a false conduct violation. Evans was not properly identified by plaintiff as a defendant. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). However, even if the Court were to assume that Evans had been properly named, plaintiff's claim against him fails.

Because Evans was not properly identified as a defendant, plaintiff has not indicated the capacity in which Evans is sued. A plaintiff can bring a § 1983 claim against a public official acting in his or her official capacity, his or her individual capacity, or both. *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007). However, if a plaintiff's complaint is silent about the capacity in which the defendant is being sued, the complaint is interpreted as including only official capacity claims. *Id. See also Johnson*, 172 F.3d at 535 ("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity"); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998) ("If the complaint does not specifically name the defendant in his individual capacity, it is presumed he is sued only in his official capacity"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official-capacity claims").

In this case, because plaintiff has not stated the capacity in which Evans is sued, any claim against him is assumed to be in his official capacity only. An official capacity claim against an

individual is actually a claim against the governmental entity employing the individual. *See White*, 865 F.3d at 1075. Presumably, based on the context in which he appears, Evans is an employee of the State of Missouri.

As previously discussed, however, a state is not a "person" for purposes of a 42 U.S.C. § 1983 claim. *See Will*, 491 U.S. at 71. Moreover, an official capacity claim against a state employee for money damages is barred by the Eleventh Amendment. *See Andrus ex rel. Andrus*, 197 F.3d at 955. To the extent that plaintiff is seeking prospective injunctive relief, he has not demonstrated that the State of Missouri is liable for violating his constitutional rights. *See Marsh*, 902 F.3d at 751 (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). For these reasons, plaintiff has not stated an official capacity claim.

Even if the Court were to assume that Evans was sued in an individual capacity, plaintiff has still failed to state a claim against him. Plaintiff asserts only that Evans "lied" about his PREA claim and gave him a false conduct violation, without providing any supporting facts as to what Evans actually did or did not do to violate plaintiff's constitutional rights. For example, plaintiff has provided no facts to demonstrate how Evans lied, what he lied about, or how the lie harmed him. Further, he does not present any facts showing that the conduct violation he received was actually false. To the contrary, plaintiff's own exhibits indicate that plaintiff was given a conduct violation for fighting because he admitted to being in a physical altercation. (Docket No. 1-1 at 2). In short, plaintiff's conclusory allegations against Evans are insufficient to state a claim. *See Johnson v. Precythe*, 901 F.3d 973, 977 (8th Cir. 2018) ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible

claim for relief"). Therefore, even if plaintiff had sued Evans in an individual capacity, the claim would be dismissed.

### ii.     Investigator Idol

Plaintiff asserts that Investigator Idol, who investigated plaintiff's PREA claim, was "wicked" and corrupt for finding the sexual assault claim unsubstantiated. He also states that Investigator Idol never "saw" plaintiff, but only spoke to him over the phone.

Plaintiff's claim against Investigator Idol fails for the same reasons as his claim against Evans. Because plaintiff did not properly identify Idol as a defendant, and indicate the capacity in which Idol is sued, the Court assumes that plaintiff intended an official capacity claim only. However, as previously discussed, plaintiff has failed to state a claim against the State of Missouri, which presumably employs Investigator Idol. Therefore, plaintiff's official capacity claim must be dismissed.

Even if Investigator Idol had been sued in an individual capacity, plaintiff has presented only conclusory allegations that Idol is "wicked" and "corrupt," without supporting these labels with any facts. *See Johnson*, 901 F.3d at 977 ("A pleading must offer more than labels and conclusions or a formulaic recitation of the elements of a cause of action to state a plausible claim for relief"). Clearly, plaintiff is upset that Investigator Idol found his PREA claim to be unsubstantiated. Nonetheless, he has not provided the Court with any facts from which to conclude that Investigator Idol's determination was incorrect, much less that the investigation was undertaken in such a manner as to violate plaintiff's constitutional rights. Therefore, even if plaintiff had sued Investigator Idol in an individual capacity, the claim would be dismissed.

### iii.      Failure to Protect

Plaintiff states that staff at the Potosi Correctional Center placed him in a cell with a "sexual predator." Then, when this inmate allegedly assaulted him, plaintiff suggests that no help came after he hit the panic button. Nevertheless, to the extent that plaintiff is attempting to assert a failure to protect, he has not adequately stated a claim.

Being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses. *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007). As such, prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). Prison officials must take reasonable measures to guarantee inmate safety and to protect prisoners from violence at the hands of other prisoners. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004). However, not every injury suffered by one prisoner at the hands of another prisoner translates into constitutional liability. *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010). "Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018).

To prove an Eighth Amendment violation, an inmate must fulfill two requirements, one objective and one subjective. *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement is that, viewed objectively, the alleged deprivation of rights is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective inquiry, and requires that the prisoner prove that the prison official had a "sufficiently culpable state of mind." *Id.* "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Lenz v. Wade*, 490 F.3d 991, 995 (8th Cir. 2007).

Here, plaintiff has not presented sufficient facts to demonstrate a deliberate indifference to his safety. With regard to being placed in a cell with a "sexual predator," plaintiff has adduced no facts establishing that the inmate who allegedly assaulted him was actually a known danger, or presented any type of threat to him. *See Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (explaining that a typical failure to protect case arises out of an inmate-on-inmate assault that involves an attacker known to be dangerous and volatile). With regard to the correctional staff's response, plaintiff vaguely states that he received "no help," yet also indicates that correctional staff did respond, just not in the matter that plaintiff desired. In any event, plaintiff's ambiguous declaration about receiving "no help" is not enough to demonstrate deliberate indifference. Moreover, and more fundamentally, plaintiff has not identified, or attempted to identify, any individual who he believes is responsible for failing to ensure his safety. For all these reasons, to the extent that plaintiff is asserting a failure to protect claim, such claim must be dismissed.

### E.  Claims Regarding Food

Throughout the complaint and subsequent supplements, plaintiff presents allegations regarding the food he is receiving. Some of these allegations declare that he is receiving foreign objects in his meals. Other allegations assert only that he is not receiving the proper food, the proper portions, or that the food is not in the correct slot in his tray.

### i.     Objects in Food

Plaintiff asserts that while at the Southeastern Correctional Center, he discovered a horsefly in his lunch and dinner. (Docket No. 1 at 3). At the Potosi Correctional Center, he has allegedly found insects and chemicals in his food, coffee, and milk, as well as "human remains," such as an

ear. (Docket No. 7 at 9; Docket No. 10 at 2). He also mentions unidentified "stuff" that he has found in his hot cereal and oatmeal, which he has attempted to mail. (Docket No. 19 at 1).

Pursuant to 28 U.S.C. § 1915, a court may dismiss a claim as frivolous if it lacks an arguable basis in law or fact. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). When dealing with factual frivolity, courts are given "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Such a dismissal encompasses allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.*

Here, plaintiff has described an effort that reaches across different institutions to place foreign objects, including "human remains," into his food. As is clear from his filings, this is a claim that plaintiff has made repeatedly through his prison's grievance procedure. Despite repeating this accusation several times, in several different ways, plaintiff has not provided any facts to demonstrate that he is being targeted in the manner in which he describes. Indeed, in one of the grievance responses filed with the Court, plaintiff is advised that "meal trays are served without means of identifying which offender will receive the tray, or which housing unit will receive specific trays." (Docket No. 17 at 7). The Court finds this claim, especially the contention that he has found "human remains" in his food, to be wholly incredible and without any basis in fact. Moreover, plaintiff's overall insistence that foreign objects are being systematically placed into his food trays by correctional staff rises to the level of the irrational. Therefore, this claim must be denied.

### ii.     Other Claims Regarding Food

Aside from finding foreign objects in his meals, plaintiff repeatedly complains about staff "messing" with his food trays. In particular, plaintiff references not receiving the proper food, not receiving the proper amount of food, and not receiving food in its proper slot on the tray. For example, plaintiff asserts that on August 4, 2020, he received a tray in which the peanut butter was already on the "molded bread," and "not in the white little cup like it ought to be." (Docket No. 11 at 13). He also notes that he received no pancakes or pork sausages on Mondays or Fridays.

Prisoners have a right to nutritionally adequate food. *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). *See also Burgin v. Nix*, 899 F.2d 733, 734 (8th Cir. 1990) ("One constitutional protection retained by the prisoner is the right to an adequate diet"). While control of the diet is within the discretion of prison officials, the diet must be adequate. *Divers v. Dep't of Corrs.*, 921 F.2d 191, 194 (8th Cir. 1990). A plaintiff can demonstrate that his right to an adequate diet was violated by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016). *See also Obama v. Burl*, 477 Fed. Appx. 409, 412 (8th Cir. 2012) (stating that plaintiff's allegations regarding constant hunger, small food portions, and weight loss were sufficient for purposes of preservice review); and *Davis v. State of Missouri*, 389 Fed. Appx. 579, 579 (8th Cir. 2010) (stating that allegations that plaintiff lost nineteen pounds during eight-month stay in jail due to insufficient food, and that he was always sick and lacking energy, were sufficient to survive preservice dismissal).

Here, plaintiff has not adequately alleged that he is being denied nutritionally adequate food. Specifically, he has not presented any facts to show that the food he is receiving presents an immediate danger to his health, or any facts to indicate that his health has suffered as a result of

the food. He has not, for example, alleged any weight loss, sickness, or lack of energy. Instead, many of his complaints revolve around the type of food he is getting or not getting, or the presentation of the food on his tray. These facts do not support a constitutional violation. Therefore, plaintiff's claim regarding inadequate nutrition must be dismissed.

### F.  Claims Against Joshua Browers and J. Jones

Plaintiff alleges that both Joshua Browers and J. Jones have interfered with his use of his prison's grievance procedure. For instance, he has asserted that Browers and Jones refused to give him IRR forms, that they have ignored his IRRs, and that they have told him that he is not allowed to file IRRs in certain instances. (Docket No. 5 at 2; Docket No. 7 at 1; Docket No. 10 at 1; Docket No. 11 at 20). Plaintiff also states that Browers gave him a false conduct violation. (Docket No. 7 at 6-7). These allegations fail to state a claim.

First, because plaintiff did not properly identify Browers and Jones as defendants, or indicate the capacity in which they are sued, the Court must assume that plaintiff intended official capacity claims only. However, as previously discussed, plaintiff has failed to state a claim against the State of Missouri, which employs Browers and Jones. Therefore, plaintiff's official capacity claims against them must be dismissed.

Even if plaintiff had sued Browers and Jones in their individual capacities, his claims would still fail. As already discussed, an inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy*, 100 F.3d at 643. As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847. To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley*, 997 F.2d at 495. *See also Lomholt*, 287 F.3d

28

at 684 (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

Here, plaintiff has alleged that Browers and Jones hampered his participation in the grievance process by not giving him IRR forms, by not responding to his IRRs, and by telling him that he could not file IRRs in certain instances. However, a prison's grievance procedure does not confer upon plaintiff a substantive constitutional right. It therefore follows that the allegation that he has been denied access to such a procedure by Browers and Jones does not state a constitutional claim.

With regard to plaintiff's contention that Browers gave him a false conduct violation, plaintiff has failed to provide any facts establishing how the conduct violation was false, and how his receipt of the violation infringed on his constitutional rights. In other words, the Court is not required to accept plaintiff's conclusions regarding the conduct violation as true. *See Wiles*, 280 F.3d at 870 ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Therefore, for all these reasons, even if plaintiff had sued Browers and Jones in and individual capacity, the claims against them would be dismissed.

### G. Property Claims

Plaintiff makes several claims regarding lost or disposed property. For instance, he states that when he was transferred from the Northeast Correctional Center to the Potosi Correctional Center, "someone mess[ed] with [his] property," and that he was missing headphones, two plastic

cups, a bowl, all his plastic bags, all his "Christianity pictures," and his soap dish. (Docket No. 10 at 1). Beyond listing what he lost, plaintiff's property claims are vague as to what actually happened. Nonetheless, whether he is asserting that staff intentionally got rid of his property, or negligently allowed it to go missing, the claims must be dismissed.

To the extent that plaintiff is alleging that staff intentionally deprived him of his property, the claim fails as long as a meaningful post-deprivation remedy exists. *See Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004) ("When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available"). Missouri provides such an adequate post-deprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin. Mo. R. Civ. P. 99.01. *See also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law).

To the extent that plaintiff is alleging that he was deprived of his property due to staff negligence, such a claim also fails. Specifically, negligence, even gross negligence, is not actionable under § 1983. *Sellers by and through Sellers v. Baer*, 28 F.3d 895, 902-03 (8th Cir. 1994). In other words, the due process clause is not implicated by "a negligent act of an official causing unintended loss of or injury to…property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

For both these reasons, plaintiff's claims relating to the loss of his property must be dismissed.

**H. Clothing Claims**

Plaintiff makes several claims in his supplements relating to his clothing, specifically his inability to exchange his clothes. For instance, at one point, he asserts that an individual he refers to as B. Lightski refused to give him a clothing exchange for clothes that were bloodstained, filthy, holed, tag-less, and too big. (Docket No. 7 at 9). Later, he alleges that his state gray, state whites, and blankets have not been replaced, even though they are too big, have holes in them, do not have tags, and are "blood stained inside the material of the white t-shirt." (Docket No. 10 at 1-2).

The Eighth Amendment requires prison officials to ensure that inmates receive adequate clothing. *Farmer*, 511 U.S. at 831. The prisoner has the burden of showing that the clothing is inadequate. *Divers*, 921 F.2d at 194. Clothing has been deemed inadequate, for instance, when inmates are subjected to the rain and cold without protective clothing. *See Chandler v. Moore*, 2 F.3d 847, 848 (8th Cir. 1993) (stating that inmate's allegation that he was forced to stand outside in the rain and cold without adequate clothing was sufficient to preclude § 1915 dismissal); and *Gordon v. Faber*, 973 F.2d 686, 687-88 (8th Cir. 1992) (upholding district court finding that ordering inmates outdoors without hats and gloves in freezing weather violated the Eighth Amendment).

Here, plaintiff has not presented facts establishing that his clothing is inadequate. While he variously contends that his clothes are too big, have holes in them, do not have tags, or are dirty, he has not demonstrated that what he has received fails to meet his clothing needs, that he has been placed at risk for harm, or that the denial of his exchange requests rise to the level of a constitutional violation. Therefore, this claim must be dismissed.

## I.  Access to Courts Claim

Plaintiff has presented several different allegations that could be construed as an access to courts claim. For example, plaintiff states that an individual named Price returned his mail to him because it did not have enough stamps, while an individual identified as Officer Petry did not turn in his legal mail to the United States Courts. (Docket No. 5 at 1). On September 18, 2020, plaintiff asserts that someone was "messing with" his legal mail during a cell search. (Docket No. 7 at 3). Plaintiff also states that staff opened his mail to the "inspector general['s] office, though he acknowledges placing "stuff [he] found inside [his] hot wheat [cereal] and oatmeal" into the envelope. (Docket No. 19 at 1). On January 6, 2021, he alleges that Correctional Case Manager Cox advised him that an order from the United States District Court prevented him from sending in his "complaint and exhibits." (Docket No. 20 at 1). Plaintiff contends that no such order exists.

The United States Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).

While plaintiff has a right to access the courts, "the due process clause is not meant to enable the prisoner to discover grievances, and to litigate effectively once in court." *Williams v. Hobbs*, 658 F.3d 842, 852 (8th Cir. 2011). As such, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). In order to prove

actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

Plaintiff has not demonstrated that Price, Petry, Cox, or anyone else frustrated a nonfrivolous legal claim. While he suggests that these defendants have somehow impeded his ability to file documents with the Court, he has provided no facts showing that he has actually been prevented from filing anything. Likewise, his vague allegation that someone was "messing" with his legal mail in his cell fails to demonstrate any harm. Indeed, the Court notes that plaintiff has submitted fourteen separate supplements to the Court, consisting of over two hundred pages of material. Therefore, to the extent that plaintiff is attempting to raise an access to the courts claim, such claim  must be dismissed.

### J.   Claims Against Correctional Case Manager Cox

Plaintiff accuses Correctional Case Manager Cox of refusing to give him his "appeals and grievances," of refusing to allow him to proceed to the next stage of the grievance process, and of harassment and discrimination. (Docket No. 15 at 1; Docket No. 16 at 1; Docket No. 20 at 1). With regard to the harassment and discrimination, plaintiff complains that Cox advised him that an order from the United States District Court prevented him from sending in his "complaint and exhibits." According to plaintiff, no such order exists.

Because plaintiff did not properly identify Cox as a defendant, or indicate the capacity in which she is sued, the Court must assume that plaintiff intended to sue Cox in an official capacity only. However, as previously discussed, plaintiff has failed to state a claim against the State of Missouri, which employs Cox. Therefore, plaintiff's official capacity claim against her must be dismissed.

Even if Cox were assumed to be sued in an individual capacity, plaintiff's claims against her fail. With regard to the claims regarding Cox not allowing plaintiff to access the grievance process, the Court notes that a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *See Buckley*, 997 F.2d at 495. *See also Lomholt*, 287 F.3d at 684 (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon*, 1993 WL 349355, at *1 (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights"). Since plaintiff does not have a constitutional right to a grievance procedure, Cox's alleged interference with that procedure does not establish a constitutional violation.

As to the claim that Cox harassed and discriminated against him, plaintiff presents no factual allegations regarding harassment or racial discrimination. Instead, he asserts that Cox told him about a court order limiting his filings, when such an order did not exist. As discussed above, the Court has construed this as an attempt to assert an access to courts claim. However, as plaintiff has not demonstrated any interference with a nonfrivolous legal claim, or has shown that he has been kept from filing anything, the access to courts claim fails.

For all these reasons, the claims against Correctional Case Manager Cox must be dismissed.

### K. Claims Against Twenty-Nine Correctional Staff Members

In his second supplement, plaintiff lists twenty-nine separate correctional staff members who he deems "wicked, ungodly, insolent, deceitful" and false. (Docket No. 7 at 2). To the extent that plaintiff is attempting to name these individuals as defendants, the Court notes that he has not indicated the capacity in which these individuals are sued. As such, the Court assumes that he

intends to sue these defendants in their official capacities only. However, as stated previously, plaintiff has failed to state a claim against the State of Missouri for either damages or prospective injunctive relief. Therefore, the claims must be dismissed.

Even if these defendants were treated as being sued in their individual capacities, plaintiff has made no effort whatsoever to connect each person with an alleged violation of his constitutional rights. *See Mayorga*, 442 F.3d at 1132 (explaining that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." Plaintiff's mere listing of twenty-nine separate correctional staff members is not sufficient to state a claim. Therefore, these claims must be dismissed.

### L.  Claim Regarding Sexual Comments and Threats

Plaintiff asserts that a "vanity ad-seg worker made sexual comments" toward him, and also threatened to "rape" him. (Docket No. 7 at 3). It is unclear whether this worker was a state employee, or another inmate working a prison job. Even assuming that the unidentified administrative segregation worker was acting under color of law, this claim still fails.

"Generally, mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). *See also McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) ("Verbal threats and name calling usually are not actionable under § 1983"). In other words, fear or emotional injury resulting "solely from verbal harassment or idle threats is generally not sufficient to constitute an invasion of an identified liberty interest." *King v. Olmsted Cty.*, 117 F.3d 1065, 1067 (8th Cir. 1997). To determine whether a constitutional line has been crossed, a court looks to factors such as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Turner v. Mull*, 784 F.3d 485, 492 (8th Cir. 2015). A "threat is redressable under § 1983 if it caused severe

injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Id*.

Here, plaintiff has not demonstrated that the threat from the administrative segregation worker constituted an invasion of an identified liberty interest, or that it was so severe as to be redressable under 42 U.S.C. § 1983. In particular, plaintiff does not show that the threat was made more than once, that the threat appeared serious, or that the threat caused him worry or harm. Therefore, this claim must be dismissed.

### M. Conditions of Confinement Claims

Plaintiff alleges that he has "no hot water in [his] cell," and that he was getting skipped on meals and showers. (Docket No. 7 at 1; Docket No. 10 at 2). None of these allegations adequately state a claim.

Conditions of confinement "must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). *See also Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (stating that "[t]he Eighth Amendment prohibits the infliction of cruel and unusual punishment on those convicted of crimes"). As such, pursuant to the Eighth Amendment, prisoners are entitled to the basic necessities of human life and to humane treatment. *Goff v. Menke*, 672 F.2d 702, 705 (8th Cir. 1982). To that end, prison officials are required to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Simmons v. Cook*, 154 F.3d 805, 807 (8th Cir. 1998).

In order to allege an Eighth Amendment violation, a prisoner must prove that the defendant's conduct rose to the level of a constitutional violation "by depriving the plaintiff of the

minimal civilized measure of life's necessities." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). The constitutional question regarding prison conditions and confinement is whether the defendant "acted with deliberate indifference." *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016). A prison official is deliberately indifferent if he or she "knows of and disregards…a substantial risk to an inmate's health or safety." *Id*. at 645.

With regard to plaintiff's claim that he is being skipped for meals, the Court has previously explained that plaintiff has not presented sufficient facts to demonstrate that he is being denied adequate nutrition. As to his complaint that he has no hot water in his cell, plaintiff provides no further factual enhancement to demonstrate that this inconvenience has deprived him "of the minimal civilized measure of life's necessities."

With regard to the shower claim, plaintiff has a right to basic hygiene. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (stating that prisoner's allegation that he had been denied personal hygiene items stated a claim under § 1983); and *Scott v. Carpenter*, 24 Fed. Appx. 645, 647 (8th Cir. 2001) (stating that basic personal hygiene is "within the minimal civilized measure of life's necessities to which a prisoner is entitled"). However, plaintiff's assertion that he is being skipped for showers does not indicate how often or regularly this has occurred. Certainly, as plaintiff himself acknowledges, he is not being entirely kept from showering. (Docket No. 7 at 3). In short, plaintiff's ambiguous claim is not sufficient to demonstrate that his hygiene needs are not being met or that he is being denied the "minimal civilized measure of life's necessities."

Just as importantly, plaintiff has failed to identify any defendant responsible for these conditions, or to demonstrate how that person or persons has been deliberately indifferent. Rather, he broadly asserts that "staff" is responsible for his constitutional rights being violated. This is not

37

adequate to state a claim under 42 U.S.C. § 1983. For all these reasons, plaintiff's conditions of confinement claims must be dismissed.

### N.  Claims Against Officer Davis, Officer Brennen, and Officer Jarvis

Plaintiff makes several similar claims against Officers Davis, Brennen, and Jarvis. For instance, he states that Officer Davis is "continually harassing" him for no reason. (Docket No. 10 at 2; Docket No. 13 at 3). In particular, plaintiff asserts that Officer Davis has harassed him for wearing his thermal pants in the pod. Plaintiff also contends that Officers Brennen, Davis, and Jarvis are targeting him and discriminating against him by threatening to lock him up and write false conduct violations, and that Officers Davis and Brennen are harassing him and discriminating against him without purpose. (Docket No. 18 at 1; Docket No. 19 at 1).

As the Court has previously explained with regard to other defendants named in the supplements, plaintiff has not indicated the capacity in which he is suing Officer Davis, Officer Brennen, or Officer Jarvis. Thus, the claims against them are treated as official capacity claims only. An official capacity claim is actually a claim against defendants' employer, which in this case is the State of Missouri. However, plaintiff has failed to state a claim against the State of Missouri, meaning that plaintiff's official capacity claims against these three defendants must be dismissed.

Even if plaintiff had sued Officers Davis, Brennen, and Jarvis in their individual capacities, he has not presented sufficient factual allegations to state a claim. To state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). Here, plaintiff's allegations against Officers Davis, Brennen, and Jarvis consist solely of his labels and conclusions. He states that he is being harassed,

but does not detail the nature of this harassment; he claims that he is being racially discriminated against, without demonstrating how he is being treated differently than other similarly situated inmates based on his race; and he contends that he has been given false conduct violations, without making any effort to establish what made them false. In short, plaintiff's allegations do not raise a right to relief above the speculative level. *See Torti*, 868 F.3d at 671. Therefore, even if Officers Davis, Brennen, and Jarvis had been sued in their individual capacities, the claims against them would be dismissed.

## O. Discrimination Claims

Plaintiff asserts that he is being discriminated against because of his name, bloodline, family, gender, and race. In particular, he feels that he is being treated differently because he is transgender. (Docket No. 14 at 1). Specifically, plaintiff states that a white female cook is threatening to give him a conduct violation because his fingernails are too long. (Docket No. 12 at 1). Plaintiff insists, however, that is fingernails are only three centimeters long, which he feels is an appropriate length. (Docket No. 14 at 1). As a result of his fingernail length, plaintiff insists that staff "continually and purposely [harasses him] about [his] claws." (Docket No. 13 at 1).

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). The dissimilar treatment of dissimilarly situated people does not violate equal protection. *Id*. As such, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he or she was treated differently than others who were similarly situated. *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). Unless the plaintiff can make a threshold showing that he or she is similarly situated to those who allegedly received favorable treatment, the plaintiff does not have a viable equal protection claim. *Id*. The plaintiff must also show that "the different treatment is based upon either

a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).

Here, plaintiff's facts do not demonstrate that he is being singled out based on a suspect classification. Though he asserts he is being harassed on the basis of his gender and race, his facts demonstrate only that he refuses to abide by institutional rules regarding the length of his fingernails. The length of his fingernails is not a suspect classification. As such, plaintiff has presented no facts to establish that he is actually being treated dissimilarly to similarly situated inmates for equal protection purposes. Likewise, plaintiff's other mentions of racial discrimination fail to demonstrate any disparate treatment, and rely solely on his legal conclusions, which the Court does not accept as true. *See Hamilton*, 621 F.3d at 817-18 (explaining that to state a cause of action, "[a] pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice"). Therefore, his discrimination claims must be dismissed.

**P.   Medical Claims**

Plaintiff has presented several different medical claims, alleging that a nurse has not given him his therapeutic shampoo; that mental health is trying to get him to take medications he does not want; that a nurse has ignored health service requests; that he missed a medical appointment on July 1, 2020; and that there was a delay in him receiving the I-Prin he requested. (Docket No. 10 at 2; Docket No. 11 at 15-16; Docket No. 14 at 2; Docket No. 15 at 1; Docket No. 16 at 1-2).

Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's

conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

### i.   Therapeutic Shampoo

Plaintiff states that he is being denied his therapeutic shampoo for dermatitis and psoriasis. In particular, he complains that he is not receiving the amount of shampoo to which he believes he is entitled. This is not sufficient to demonstrate that the nurse knew of and disregarded a serious medical need, or that the nurse's actions were "so inappropriate as to evidence intentional

maltreatment or a refusal to provide essential care." In other words, plaintiff's facts do not indicate the consequences of his failure to receive the shampoo, how often this has occurred, or even that the nurse was intentionally refusing to give him the shampoo. Indeed, according to an exhibit plaintiff submitted to the Court, plaintiff actually received a bottle of his therapeutic shampoo, but was upset because he thought he was supposed to get four bottles. (Docket No. 9 at 15). However, a separate exhibit submitted by plaintiff indicates that his current allotment of shampoo is one bottle per month, which he has been given. (Docket No. 9 at 16). In short, plaintiff's allegations regarding his therapeutic shampoo do not demonstrate deliberate indifference. Therefore, this claim must be dismissed.

### ii.      Mental Health Medications

Throughout his supplements, plaintiff complains that mental health is trying to get him to take certain medications, which he does not identify. Under the Fourteenth Amendment, a prisoner has a liberty interest in "avoiding the unwanted administration of antipsychotic drugs." *Doby v. Hickerson*, 120 F.3d 111, 113 (8th Cir. 1997). Likewise, under the Eighth Amendment, involuntary medication may involve either deliberate indifference or excessive force. *See Chuol v. Frankes*, 2020 WL 6707104, at *3 (D. Neb. 2020).

In this case, however, plaintiff has not alleged that mental health has forced him to take any medications. To the contrary, he merely accuses them of trying to persuade him to take such medications for his own benefit. Nothing in these facts suggests that he has been medicated against his will, thereby potentially raising a constitutional issue. As such, plaintiff has failed to establish the violation of a liberty interest under the Fourteenth Amendment, or demonstrate any deliberate indifference or excessive force under the Eighth Amendment. Therefore, this claim must be dismissed.

### iii.      Ignored Health Service Requests and Missed Appointment

Plaintiff asserts that his health service requests were ignored, and that he missed a medical appointment on July 1, 2020, because a guard tried to place him in a holding cell with a known enemy. With regard to his health service requests allegedly being ignored, plaintiff has not demonstrated deliberate indifference. That is, plaintiff has not shown what his requests were for, meaning that he has failed to establish that his requests concerned an objectively serious medical need. Likewise, he has also failed to adequately allege that the failure to respond to these requests constituted actions "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." As to the claim that plaintiff missed a single medical appointment, he similarly fails to indicate how this instance constituted a deliberate disregard of a serious medical need. Therefore, these claims must be dismissed.

### iv.      Delay in Receiving I-Prin

Plaintiff alleges that he turned in a health service request for a box of I-Prin, and that he did not receive it. When he reported this to a nurse, he was told it would take a week for him to receive the box, leaving him in pain. As noted above, the intentional denial or delay of medical treatment, as well as the interference with prescribed medication, may constitute deliberate indifference. Here, however, plaintiff has presented no facts to demonstrate that the nurse intentionally denied or delayed anything. Rather, as plaintiff himself acknowledges, he was told that the medication would arrive in a week. Therefore, this claim must be dismissed.

### Q.  False Conduct Violations

As discussed above, plaintiff has accused various individuals of writing false conduct violations. Aside from these claims, plaintiff has generally asserted that "wicked" staff are writing false violations even though he is not at fault. (Docket No. 5 at 1; Docket No. 17 at 1).

These vague allegations are insufficient to state a claim. First, plaintiff has not identified any individual who is responsible for writing these violations. Second, plaintiff has failed to present sufficient facts to raise a right to relief above the speculative level. *See Torti*, 868 F.3d at 671 ("Courts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level"). More specifically, plaintiff has not provided a single fact to support his proposition that the conduct violations were "false." Instead, he presents the falsity as a conclusion, which the Court is not required to accept as true. *See Wiles*, 280 F.3d at 870 ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations"). Therefore, this claim must be dismissed.

## R. Banging Food Port Door and Commissary Claims

Plaintiff states that he is being harassed by staff who are banging the food port door, and that the commissary has overcharged him for certain items, as well as selling him defective pens. (Docket No. 7 at 3; Docket No. 11 at 13). "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States." *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016). Specifically, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). A plaintiff bringing a § 1983 action must include in his complaint "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015).

Here, plaintiff has not demonstrated that staff banging the food port door, or the commissary overcharging him for certain items, has deprived him of a constitutionally protected federal right. As such, he is missing an essential element of a claim under 42 U.S.C. § 1983. Therefore, these claims must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.50 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 25th day of January, 2021.

STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE